## UNITED STATES COURT OF APPEALS

## ELEVENTH CIRCUIT

CASE NO. 18-13452-B

MARIA DEL ROCIO BURGOS GARCIA and LUIS A. GARCIA SAZ,

      Appellants/Cross-Appellees,

vs.

CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC. and CHURCH OF SCIENTOLOGY FLAG SHIP ORGANIZATION, INC.

      Appellees/Cross-Appellants.

_____/

**REPLY BRIEF OF APPELLANTS**
**AND RESPONSE BRIEF OF CROSS-APPELLEES**
On appeal from the United States District Court, Middle District of Florida

Babbitt & Johnson, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
tedbabbitt@babbitt-johnson.com
    and
GRAYROBINSON, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL 33601
rjohnson@gray-robinson.com
valerie.taylor@gray-robinson.com

BURLINGTON & ROCKENBACH, P.A.
444 West Railroad Avenue, Ste. 350
West Palm Beach, FL 33401
(561) 721-0400
Attorneys for Appellants
pmb@FLAppellateLaw.com
kbt@FLAppellateLaw.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants/Cross-Appellees, MARIA DEL ROCIO BURGOS GARCIA and LUIS A. GARCIA SAZ, pursuant to E.R.P. 26.1, and 11th Cir. R. 26.1-3, hereby submit this Certificate of Interested Persons and Corporate Disclosure Statement, as follows:

Babbitt, Theodore – Counsel for Appellants

Babbitt & Johnson, P.A. – Counsel for Appellants

Burlington & Rockenbach, P.A – Counsel for Appellants

Burlington, Philip M. – Counsel for Appellants

Church of Scientology Flag Service Organization, Inc. – Appellee

Church of Scientology of Flag Ship Service Organization, Inc. – Appellee

Deixler, Bert H. – Counsel for Appellees

Garcia, Maria Del Rocio Burgos – Appellant

Johnson, Pope, Bokor, Ruppel & Burns, LLP – Counsel for Appellees

Johnson, Robert E. – Counsel for Appellants

GrayRobinson, P.A. – Counsel for Appellants

Lieberman, Eric M. – Counsel for Appellees

Rabinowitz, Boudin, Standard, Krinsky & Lieberman – Counsel for Appellees

Pope, F. Wallace, Jr. – Counsel for Appellees

Potter, Robert Vernon – Counsel for Appellees

Saz, Luis A. Garcia – Appellant

Weil, Quaranta, McGovern, P.A. – Counsel for Appellants

Weil, Ronald P.  – Counsel for Appellants

Weil, Snyder, Schweikert & Ravindran, P.A. – Counsel for Appellants

Whittemore, James D. – U.S. Middle District Court Judge

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ....................................................C1

TABLE OF CONTENTS..........................................................................................i

TABLE OF CITATIONS ........................................................................................v

ARGUMENT ..........................................................................................................1

POINT I...................................................................................................................1

THE TRIAL COURT ERRED IN COMPELLING ARBITRATION BECAUSE THE ARBITRATION AGREEMENT IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE.

A.    The Arbitration Agreement is Procedurally Unconscionable .................2

B.    The Arbitration Agreement is Substantively Unconscionable..............7

1.    The Parties Were Not Mutually Obligated to Arbitrate .......................7

2.    The Arbitration Provision Was Inherently Unfair to Plaintiffs .............................................................................................13

3.    The Trial Court was not Precluded from Considering Plaintiffs' Claims of Substantive Unconscionability by the First Amendment..................................................................................17

POINT II .................................................................................................................20

THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION TO VACATE THE ARBITRATION AWARD.

A.    The Arbitration Award Should have Been Vacated Because there was Evident Partiality or Corruption of the Arbitrators.............20

B.      The Arbitration Award Should Have Been Vacated Because the Arbitrators Were Guilty of Misconduct ........................................26

1.      The Arbitrators Refused to Hear Any Evidence Critical of Scientology and Allowed the IJC to Present Evidence Outside Plaintiffs' Presence ................................................26

2.      The Arbitrators Committed Misconduct in Limiting Consideration of Plaintiffs' Claims in Violation of Defendants' Prior Representations to the Court...................................28

a.      Defendants framed the issue opposite of how it told the trial court it would in defending its right to arbitrate ................................28

b.      Defendants refused to allow Plaintiffs' counsel to participate in the proceedings ................................................28

c.      Defendants failed to provide written findings of the arbitrators despite assuring the trial court that such would be provided ................................................28

C.      The First Amendment Did Not Prevent Vacatur of the Arbitration Award ................................................29

CONCLUSION ................................................30

STATEMENT OF THE CASE AND FACTS RELATED TO THE CROSS-APPEAL................................................31

SUMMARY OF THE ARGUMENT ON CROSS-APPEAL ................................40

ARGUMENT ON CROSS-APPEAL ................................................43

POINT I................................................43

PLAINTIFFS    MET    THEIR    BURDEN    OF ESTABLISHING DIVERSITY JURISDICTION.

POINT II ...............................................................................................45

      THE DISTRICT COURT HAD SUBJECT MATTER
      JURISDICTION OVER PLAINTIFFS' MOTION TO
      VACATE THE ARBITRATION AWARD.

      Standard of Review.........................................................................45

      Merits..............................................................................................45

POINT III .............................................................................................50

      THE TRIAL COURT PROPERLY DENIED THE
      MOTIONS TO DISMISS THE ORIGINAL AND
      AMENDED COMPLAINT.

      Standard of Review.........................................................................50

      Merits..............................................................................................50

      A.    The Trial Court did Not Err in Denying the Motion to
            Dismiss the Oringinal Complaint ......................................50

      B.    The Trial Court did Not Err in Denying the Motion to
            Dismiss the Amended Complaint ......................................51

POINT IV .............................................................................................58

      THE TRIAL COURT DID NOT ERR IN ALLOWING
      PLAINTIFFS' TO AMEND THEIR COMPLAINT.

      Standard of Review.........................................................................58

      Motion to Amend Standards............................................................58

      Merits..............................................................................................58

CONCLUSION .....................................................................................60

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................61

CERTIFICATE OF SERVICE ...................................................................................62

SERVICE LIST..........................................................................................................63

# TABLE OF CITATIONS

**CASES**                                                                 **PAGE**

Ainsworth v. Schoen,
  606 So. 2d 1275 (Fla. 3d DCA 1992)                                          18

Allard v. Church of Scientology,
  58 Cal. App.  3d 439 (Cal. 2d Dist. 1976)                              14, 15

Balsuto v. Hialeah Automotive,
  141 So.3d 1145 (Fla. 2014)                                                  2

BDO Seidman, LLP v. Bee,
  970 So.2d 869, (Fla. 4th DCA 2007)                                         16

Bellsouth Mobility LLC v. Christopher,
  819 So.2d 171 (Fla. 4th DCA 2002)                                           9

Berg v. Berg
  2008 WL 415562 (N.Y. Sup. Ct. 2008)                                        21

Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.,
  713 F.2d 618 (11th Cir. 1983)                                              54

Blankenship v. Claus,
  149 Fed. Appx. 897 (11th Cir. 2005)                                        43

Bryant v. Ally Fin.,
  452 Fed. Appx. 908 (11th Cir. 2012)                                43, 45, 50

Bryant v. Rich,
  530 F.3d 1368 (11th Cir.2008)                                          45, 50

Cantwell v. Connecticut,
  310 U.S. 296 (1940)                                                        12

Carden v. Arkoma Associates,
  494 U.S. 185 (1990)    55

Carter v. HSBC Mortg. Services, Inc.,
  622 Fed. Appx. 783 (11th Cir. 2015)    58

Christofferson v. Church of Scientology,
  644 P.2d 577 (Ore. App. 1982)    13

Church of Scientology Flag Service Organization, Inc. v. City of Clearwater,
  2 F.3d 1514 (11th Cir. 1993)    12

Church of Scientology of California v. Armstrong,
  232 Cal. App. 3d 1060 (Cal. 4th Dist. 1991)    8

Church of Scientology of California v. Siegelman,
  475 F.Supp. 950 (S.D.N.Y. 1979)    8

Cooper v. Meridian Yachts, Ltd.,
  575 F.3d 1151 (11th Cir. 2009)    54

Discover Bank v. Vaden,
  396 F.3d 366 (4th Cir. 2005)    46

Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.,
  430 F.3d 1269 (10th Circ. 2005)    48

Doscher v. Sea Port Group,
  832 F.3d 372 (2d Cir. 2016)    48

Easterly v. Heritage Christian Sch., Inc.,
  2001 WL 2750099 (S.D. Ind. 2009)    18

E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,
  160 F.3d 925 (2d Cir. 1998)    56

Foman v. Davis,
  371 U.S. 178 (1962)    58

Gainesville Health Care Center, Inc. v. Weston,
   857 So.2d 278 (Fla. 1st DCA 2003)                                           4

Gen. Conference of Evangelical Methodist Church v. Evangelical Methodist
   Church of Dalton, Georgia, Inc.,
   807 F. Supp. 2d 1291 (N. D. Ga. 2011)                                   16, 18

Greenbrook NH, LLC v. Estate of Sayre, ex rel. Raymond,
   150 So.3d 878 (Fla. 2d DCA 2014)                                            4

Gov't Services, Inc. v. MPRI, Inc.,
514 F.3d 856 (9th Cir. 2007)                                          53, 54, 59

Gupta v. McGahey,
   709 F.3d 1062 (11th Cir. 2013)                                          45, 50

Hermes of Paris, Inc. v. Swain,
   867 F.3d 321 (2d Cir. 2017)                                                47

Hernandez v. Commissioner of Internal Revenue,
   490 U.S. 680 (1989)                                                        11

Hoefling v. City of Miami,
   811 F.3d 1271 (11th Cir. 2016)                                             51

Hooters v. America, Inc. v. Phillips,
   173 F.3d 933 (4th Cir. 1999)                                             5, 14

In re The Bible Speaks,
   869 F.2d 628 (1st Cir. 1989)                                               12

Indiana Gas Co., Inc. v. Home Ins. Co.,
   141 F.3d 314 (7th Cir. 1998)                                               55

Inetianbor v. CashCall, Inc.,
   768 F.3d 1346 (11th Cir. 2014)                                              6

Intracoastal Ventures Corp. v. Safeco Ins. Co. of America,
   540 So.2d 162 (Fla. 4th DCA 1989)                                           6

Jackson v. Payday Financial, LLC,
  764 F.3d 765 (7th Cir. 2014)                                  6, 7, 8

Jenkins v. Trinity Evangelical Lutheran Church,
  825 N.E.2d 1206 (Ill. 2005)                                 16, 18

Jones v. Wolf,
  443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979)          19

Kedroff v. St. Nicholas Cathedral,
  344 U.S. 94 (1952)                                       20

Kislak v. Kreedian,
  95 So.2d 510 (Fla. 1957)                                52

Lang v. Levi,
  16 A.3d 980 (Md. Ct. Spec. App. 2011)                  21

Magruder v. Fidelity Brokerage Services LLC,
  818 F.3d 285 (7th Cir.2016)                              48

Malone & Hyde, Inc. v. RTC Transp., Inc.,
  515 So.2d 365 (Fla. 4th DCA 1987)                     6

McCabe, Hannity & Remington, Co. v. ILWU,
  557 F. Supp. 2d 1171 (D. Haw. 2008)                 22, 23

McCormick v. Aderholt,
  293 F.3d 1254 (11th Cir.2002)                          43

Meshel v. Ohev Sholom Talmud Torah,
  869 A.2d 343 (D.C. 2005)                             13, 17

Molko v. Holy Spirt Association for Unification of Royal Christianity,
  762 P.2d 46 (Cal. 1988)                              13

Murray v. United Food & Commercial Workers' International Union,
  289 F.3d 297 (4th Cir. 2002)                             2

Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,
   820 F.3d 527 (2d Cir. 2016)                                             16

Northport Health Services of Arkansas, LLC v. Rutherford,
   605 F.3d 483 (8th Cir. 2010)                                           47

Ortix-Espinosa v. BBVA Securities,
   852 F.3d 36 (1st Cir. 2017)                                            48

Palm Beach Motor Cars Limited, Inc. v. Jeffries,
   885 So.2d 990 (Fla. 4th DCA 2004)                                       9

Peacock Hotel, Inc. v. Shipman,
   138 So. 44 (Fla. 1931)                                                  1

Pierson v. Rogow,
   669 Fed. Appx. 550 (11th Cir. 2016)                                    43

Puckett v. United States,
   556 U.S. 129 (2009)                                                    59

Religious Technology Center v. Learm,
   908 F.Supp. 1362 (Ed. Va. 1995)                                         9

Religious Technology Center v. Wollersheim,
   796 Fed. 2d 1076 (9th Cir. 1986)                                        8

Robbie v. City of Miami,
   469 So.2d 1384 (Fla. 1985)                                              5

Schiavone Const. Co. v. City of New York,
   99 F.3d 546 (2d Cir. 1996)                                             55

Serbian Eastern Orthodox Diocese v. Milivojevich,
   426 U.S. 696 (1976)                                              18, 19, 20

Shuler v. Ingram & Associates,
   441 Fed. Appx. 712 (11th Cir. 2011)                                    54

Simpson v. Fender,
  445 Fed. Appx. 268 (11th Cir. 2011)    43

Solymar Invs., Ltd. v. Banco Santander S.A.,
  672 F.3d 981 (11th Cir. 2012)    17

Spector v. Torenberg,
  852 F. Supp. 201 (S.D.N.Y. 1994)    21

Spicer v. Tenet Florida Physician Services, LLC,
  149 So.3d 163 (Fla. 4th DCA 2014)    6

Steinhardt v. Rudolph,
  422 So.2d 884 (Fla. 3d DCA 1982)    1, 2

Tempo Shain Corp. v. Bertek, Inc.,
  120 F.3d 16 (2d Cir. 1997)    28

Thompson v. Sunbelt Credit Corp. of Florida,
  2015 WL 11197762 (S.D. Fla. 2015)    9

Tinaway v. Merrill Lynch & Co., Inc.,
  658 F.Supp 576 (S.D.N.Y. 1987)    24

Triggs v. John Crump Toyota, Inc.,
  154 F.3d 1284 (11th Cir. 1998)    43
Underwriters at Lloyd's, London v. Osting-Schwinn,
  613 F.3d 1079 (11th Cir. 2010)    56

United States v. Al–Arian,
  514 F.3d 1184 (11th Cir.2008)    45, 50

University Commons-Urbana, Ltd. v. Universal Constructors, Inc.,
  304 F.3d 1331 (11th Cir. 2002)    20

Vaden v. Discover Bank,
  556 U.S. 49 (2009)    46, 47

Van Schaick v. Church of Scientology of Cal., Inc.,
  535 F.Supp. 1125 (D. Mass. 1982)    13

<u>Voicestream Wireless Corp. v. US Communications, Inc.,</u>
  912 So.2d 34 (Fla. 4th DCA 2005)                                    4

<u>Watson v. Jones,</u>
  80 U.S. 679 (1871)                                              19, 20

<u>Winfrey v. Simmons Food, Inc.,</u>
  495 F.3d 549 (8th Cir. 2007)                                       15

## **<u>STATUTES</u>**

9 U.S.C. §10(a)(2)                                                  20
9 U.S.C. §10(b)                                                     24
9 U.S.C. § 4                                                    46, 47
9 U.S.C. § 16                                                       38
28 U.S.C. § 1332(a)(1)                                              43
28 U.S.C. § 1332(d)                                                 31

## **<u>RULES</u>**

11th Cir. R. 26.1-3                                                  1
Fed. R. Civ. P. 11(c)                                              59
Fed.R.Civ.P. 11(a)                                                 53
Fed.R.Civ.P. 15(a)(2)                                              58
Federal Rule of Appellate Procedure 32(a)(7)(B)                    61

**ARGUMENT**

**POINT I**

THE TRIAL COURT ERRED IN COMPELLING ARBITRATION BECAUSE THE ARBITRATION AGREEMENT IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE.

Plaintiffs' Initial Brief provided a simple structure for Point I – A) procedural unconscionability; B) substantive unconscionability; and C) whether the First Amendment precluded the trial court from analyzing the unconscionability issues. Apparently concluding that clarity is not their ally, Defendants' response sprinkles their First Amendment argument throughout their Point I. Plaintiffs will retain their original structure.

Defendants repeatedly claim that the standard for determining unconscionability is whether "no man in his senses and not under delusion" would make such an agreement, without citing any legal authority (AB 69, 70). As discussed in *Steinhardt v. Rudolph*, 422 So.2d 884 (Fla. 3d DCA 1982), that definition came from cases in the 18th and 19th century, and "in a more modern context" the standard is where "one party [to a contract] has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce," quoting *Peacock Hotel, Inc. v. Shipman*, 138 So. 44, 46 (Fla. 1931). That is the standard adopted by the Florida Supreme Court in its most

1

recent decision addressing unconscionability, *Balsuto v. Hialeah Automotive*, 141 So.3d 1145, 1157 (Fla. 2014).

This is consistent with the standard applied under the Federal Arbitration Act. *See Murray v. United Food & Commercial Workers' International Union*, 289 F.3d 297, 303 (4th Cir. 2002):

> Although an arbitration agreement will not be invalidated for failure to "replicate the judicial forum," *id.* at 940, **we again refuse to enforce an agreement so "utterly lacking in the rudiments of even-handedness**," *id.* at 935. By agreeing to arbitration in lieu of litigation, the parties agree to "trade 'the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Id.* at 936 (quoting *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647). **They do not agree to forego their right to have their dispute fairly resolved by an impartial third party**. *See id.* at 941. [E.S.]

As discussed, *infra*, the arbitration process intended by Defendants and the arbitration itself was utterly lacking in the rudiments of even-handedness.

## A.    The Arbitration Agreement is Procedurally Unconscionable.

Defendants contend that Plaintiffs waived argument on the issue of whether the enrollment agreements were contracts of adhesion. Plaintiffs did not waive the issue, the defense conceded it, and the trial court specifically found that they were adhesion contracts (DE189 at 10).

In Plaintiffs' opposition papers they argued that the enrollment agreements were adhesion contracts, defined as a standardized contract drafted by the party of superior bargaining strength, which provides the subscribing party only the

opportunity to adhere to the contract or reject it (DE30 at 6-7, 11). At the first hearing on the arbitration issue, the adhesive nature of the contract was discussed extensively (DE129 at 16-20, 28, 34, 38-39). At the evidentiary hearing, Garcia testified, without contradiction, that he had no choice but to sign the enrollment agreements in order to obtain the services that he had already paid for (DE195 at 36).

In the trial court's order compelling arbitration, it specifically noted it was undisputed that the enrollment applications were nonnegotiable (DE189 at 10) also stating (*id.*):

> In support of their contention that the arbitration clauses are procedurally unconscionable, Plaintiffs initially argued that the Enrollment Applications are contracts of adhesion. **And Defendants acknowledged during oral argument that these agreements are adhesive.** [E.S.]

Defendants contends that Plaintiffs waived the issue, quoting the court's comment as follows (DE129 at 41):

> Well, Mr. Babbitt just acknowledged that he's not in a position to contend that they were rushed or forced to sign something because of that very point. So I'm moving on.

However, the issue of whether someone was rushed or forced to sign a contract is a question of duress or coercion, not a contract of adhesion. Therefore, the issue was not waived.

Under Florida law, "the fact that a contract is one of adhesion is a strong indicator that the contract is procedurally unconscionable", *Gainesville Health Care Center, Inc. v. Weston*, 857 So.2d 278, 285 (Fla. 1st DCA 2003); but in itself it is not enough to require a finding of procedural unconscionability, *Voicestream Wireless Corp. v. US Communications, Inc.*, 912 So.2d 34, 40 (Fla. 4th DCA 2005). The trial court noted that in its order, which would have been meaningless if the court believed Plaintiffs had waived the issue.

One of the "essential terms of an arbitration agreement" under Florida law is that it must provide "the form and procedure for arbitration", which is separate from the essential term of "how the arbitrators were to be selected." *See Greenbrook NH, LLC v. Estate of Sayre, ex rel. Raymond*, 150 So.3d 878, 881 (Fla. 2d DCA 2014) (citation omitted).

The trial court unequivocally rejected Defendants' contention that the Scientology Committee on Evidence provided any forms or procedure for the arbitration, a ruling Defendants do not challenge. No other source for the forms or procedure were ever proffered by Defendants.

Nonetheless, the trial court found that essential term satisfied because Plaintiffs had "some idea" of the "procedures by which arbitration was to be effected." (DE189 at 15-16). Defendants cite no legal authority for the proposition that an essential term of an arbitration agreement can be satisfied by the court's

4

speculative determination of the subjective expectation of one of the parties. Such an analysis violates fundamental contract principles, including that the meaning of contracts are determined by their terms, not the subjective expectations of one or both parties. *See Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla. 1985).

Additionally, there is no factual basis for the trial court's speculation. As the court noted, the word "arbitration" cannot be found in the Committee on Evidence materials or anywhere in L. Ron Hubbard's writings (DE189 at 12). The court also noted, that Defendants conceded at the hearing that there had never been an arbitration in Scientology's history (DE189 at 13, 14). Mr. Garcia also testified that in all of his Scientology studies he had never seen the word "arbitration" (DE195 at 45). Defendants presented no evidence to the contrary.

In fact, it was obvious Defendants had no idea what the arbitration procedures were when the Enrollment Agreements were signed. The court later noted Defendants advised Plaintiffs that "the conduct of the religious arbitration will be decided by the IJC at the appropriate time **during the arbitration**." (DE265 at 3). This is classic procedural unconscionability, because granting one party carte blanche to make up the rules for arbitration eliminates any pretense of even handedness. *See Hooters v. America, Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999).

5

Defendants rely primarily on *Intracoastal Ventures Corp. v. Safeco Ins. Co. of America*, 540 So.2d 162 (Fla. 4th DCA 1989), overruled *Nationwide Mutual Fire Ins. Co. v. Schweitzer*, 872 So.2d 278 (Fla. 4th DCA 2004). Defendants ignore that *Schweitzer* held that an appraisal provision, which is what was at issue in *Intracoastal Ventures*, is **not** "an agreement to arbitrate." 872 So.2d at 279. Therefore, *Intracoastal Ventures* is not valid precedent on arbitration agreements.

Defendants ignore *Spicer v. Tenet Florida Physician Services, LLC*, 149 So.3d 163 (Fla. 4th DCA 2014), which is on point. There, the court determined that the arbitration agreement was **not** enforceable solely because it did not "set forth any procedures for arbitration", but simply referred to the "Tenet Fair Treatment Process, which includes final and binding arbitration." *Spicer* and other Florida cases[1] should control here, not *Intracoastal Ventures*.

Defendants dismiss Plaintiffs' reliance on *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014) and *Jackson v. Payday Financial, LLC*, 764 F.3d 765 (7th Cir. 2014) as "an act of desperation," but ignore their similarity to this case. Here, as in *Inetianbor* and *Jackson*, Defendants inserted an arbitration provision into an adhesion contract, claiming there was a Scientology forum for arbitrations. In fact, there was no such forum, and as Defendants conceded, there had never

---

[1] *E.g. Malone & Hyde, Inc. v. RTC Transp., Inc.*, 515 So.2d 365 (Fla. 4th DCA 1987).

6

been a Scientology arbitration. The arbitration provision here is similar to the *Inetianbor* and *Jackson* cases, *i.e.* an imaginary forum lacking any actual existence.

**B.    The Arbitration Agreement is Substantively Unconscionable**

**1.    The Parties Were Not Mutually Obligated to Arbitrate**

Defendants erroneously claim that Plaintiffs failed to raise this issue below (AB at 65). However, this issue was raised by Plaintiffs, essentially conceded by the defense, and specifically addressed by the court at the first hearing (DE129 at 41-43).

In Plaintiffs' Opposition to Defendants' Joint Motion to Compel Arbitration, they noted that substantive unconscionability under Florida law exists if there is a "lack [of] mutuality of obligation with respect to the arbitration of disputes." (DE30 at 8 n.3). Plaintiffs also cited evidence that Scientology authorizes civil court actions against suppressive persons (DE30 at 14).

At the first hearing on Defendants' Joint Motion to Compel Arbitration, the court engaged in a lengthy colloquy with defense counsel regarding whether there was mutuality (DE129 at 41-43). The trial court asked defense counsel "was Scientology bound to arbitrate any dispute with their member?" (DE129 at 42). Defense counsel responded "no." (*Id.*) After subsequent questioning by the court, defense counsel stated "we are obliged, if they invoke it." The court then proposed a hypothetical involving misconduct by a Scientologist and defense counsel said

7

only that Scientology "could opt to arbitrate." (DE129 at 43). Finally, the court asked whether "there is no reciprocal responsibility on the part of scientology to arbitrate any dispute." (*Id.*) Defense counsel's response was "there is if they invoke the right to arbitration." (*Id.*)

In Plaintiffs' Bench Memorandum for the evidentiary hearing, the mutuality issue was addressed (DE170 at 5):

> While the agreement purports to bind the Garcias, there is nothing in it which binds Scientology. In fact, their policies specifically provide that Scientology retains the right to sue the Garcias notwithstanding the arbitration agreement. (Ellis 189:18).

At the evidentiary hearing, pertinent sections of the deposition of IJC Ellis were read to the court, including the section where he conceded the lack of mutuality and that there was an official scientology policy in effect which stated (DE188 at 187-190, 191):

> Civil court action against suppressive persons to effect collection of monies owed may be resorted to as they are not entitled to Scientology ethics procedures.[2]

---

[2] It is ironic that Scientologists freely express their disdain for this country's court system (AB 66), yet their litigiousness in our courts is legendary. Scientology has not been hesitant to sue former members. *See Religious Technology Center v. Wollersheim*, 796 Fed. 2d 1076 (9th Cir. 1986) (Scientology brings Racketeer Influenced and Corrupt Organizations Act (RICO) claims against "suppressive persons" alleging that scriptural materials they retained were "trade secrets"); *see also Church of Scientology of California v. Siegelman*, 475 F.Supp. 950 (S.D.N.Y. 1979) (Scientology organizations bring libel action against former member); *Church of Scientology of California v. Armstrong*, 232 Cal. App. 3d 1060 (Cal. 4th Dist. 1991) (Scientology organization sues former member for breach of fiduciary duty for disseminating information about the church). Scientology's litigiousness is

Therefore, the mutuality issue was preserved.

Despite their concessions below, Defendants argue that there was mutuality, claiming only that Scientology has created an internal "robust and comprehensive justice system" (AB 66).[3] That argument is a *non sequitur*. Whether Scientology has an internal "justice" system is irrelevant. The issue is whether Scientology was bound by the enrollment agreements to arbitrate. It was not and therefore, there was no mutuality.

As noted in the Initial Brief, Florida law is clear that a lack of mutuality, *i.e.* the failure to require both parties to rely exclusively on arbitration, is sufficient in itself, to support a determination of substantive unconscionability. *See Palm Beach Motor Cars Limited, Inc. v. Jeffries*, 885 So.2d 990 (Fla. 4th DCA 2004); *Bellsouth Mobility LLC v. Christopher*, 819 So.2d 171 (Fla. 4th DCA 2002); *Thompson v.*

---

consistent with its policy, as expressed by L. Ron Hubbard, and relied upon by the court in *Religious Technology Center v. Learm*, 908 F.Supp. 1362, 1368 (Ed. Va. 1995), to justify an award of fees against it for meritless litigation:

> L. Ron Hubbard, the founder of Scientology, has been quoted as looking upon the law as a tool to:
>
> [h]arass and discourage rather than to win. The law can be used very easily to harass and enough harassment on somebody who is simply on the thin edge anyway, well knowing that he is not authorized, will generally be sufficient to cause his professional decease. If possible, of course, ruin him utterly.

[3] Defendants also ignore the definition of "justice" in Scientology is extremely limited. This was discussed in the Initial Brief (IB 25).

9

*Sunbelt Credit Corp. of Florida*, 2015 WL 11197762 (S.D. Fla. 2015). Defendants do not mention a single one of those cases.

Without a record citation, Defendants claim Scientology is required to convene a Committee of Evidence when it has a dispute with an individual and that a party dissatisfied with the result of the Committee of Evidence may request arbitration. Absolutely no record support is cited and it was undisputed below that the Committee of Evidence documents never mention the word "arbitration," nor do L. Ron Hubbard's writings. Defendants also mischaracterize the mutuality requirement as only applying in a commercial context and characterize it as relating to the requirement that parties may bargain over contractual provisions. That confuses mutuality with an adhesion contract, and no legal authority is cited for it.

Defendants argue that Plaintiffs' claims were "non-justiciable in a civil court" and that the agreement to arbitrate "created a remedy where none existed." (AB 66-70). No attempt is made to link this to legal principles of substantive unconscionability, and it is meritless for other reasons.

Earlier in the Answer Brief (AB 39-42), Defendants claim that Scientology provides a "limited mechanism" under which a member may seek a return of the funds paid for services. This involves the policies, directives, and procedures of the Claims Verification Board ("CVB"), which they quote at length (AB 39-40). That

10

is potentially misleading to this Court because Defendants' counsel unequivocally informed Judge Whittemore that **the CVB process does not apply to the Plaintiffs because they have been declared suppressive**. The trial court asked whether Plaintiffs needed to file a CVB voucher and defense counsel responded (DE196 at 89):

> Mr. Pope: **No, Your Honor, that actually doesn't apply to persons who are declared. You mean the, what do you call it, claims verification board. That process does not apply to people who are declared.**

Nonetheless, Defendants argue that Plaintiffs had a remedy: they could seek refunds pursuant to Claims Verification Board procedures (AB 68). This Court should summarily reject that argument out of hand based on Defendants' duplicity.

Defendants also contend that Plaintiffs' payments were irrevocable gifts and therefore the Plaintiffs have no justiciable claim. They rely on the IRS enforcement policies, but ignore the United States Supreme Court's decision in *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680 (1989). There, the Court clearly held that Scientologists' payment for training sessions and other services is in the nature of a "quid pro quo" and is not an irrevocable gift. Although the IRS has chosen to change its enforcement policies on such payments, that does not change how the law views the identical facts, especially when there is a United States Supreme Court case directly on point.

11

Defendants contend Plaintiffs cannot pursue their fraud claims based on their donations because such claims "implicate matters of church financial management, record keeping, accounting, and decision making governed by ecclesiastical principles." (AB 69). In the Initial Brief, Plaintiffs quoted *Cantwell v. Connecticut*, 310 U.S. 296, 306 (1940): **"Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public."** Plaintiffs also quoted this Court's decision in *Church of Scientology Flag Service Organization, Inc. v. City of Clearwater*, 2 F.3d 1514, 1544 (11th Cir. 1993) that **"the state does indeed have a compelling interest in protecting church members from affirmative, material misrepresentations designed to part them from their money."** This Court ultimately upheld part of the City of Clearwater's ordinance which regulated Defendant's fundraising conduct, stating (2 F.3d at 1549):

> [I]t merely duplicates the generally applicable principle that **one may not willfully [sic] and fraudulently omit material facts in the course of attempting to secure money from others.** The requirement that the statement be given in writing goes beyond otherwise applicable law, but is narrowly tailored to meet **the specific problems presented by the sophisticated practices of coercion, deception and psychological manipulation of groups like Scientology.** [E.S.]

The First Circuit in *In re The Bible Speaks*, 869 F.2d 628 (1st Cir. 1989) specifically authorized plaintiffs to sue a religious organization for fraud to recover a donation. After quoting *Cantwell*, *supra*, the court stated:

12

The five million dollar gift and the half million dollar gift might have had their seeds in the religious beliefs of plaintiff but they were both nurtured and brought to fruition by misstatements and distortions of facts that had no basis either in the religious tenets of TBS or the plaintiff's religious beliefs.

The court in *The Bible Speaks* cited with approval *Molko v. Holy Spirt Association for Unification of Royal Christianity*, 762 P.2d 46 (Cal. 1988), in which the California Supreme Court authorized the rescission of a religious donation on grounds of, *inter alia*, secular fraudulent statements. The *Molko* court concluded that allowing victims to bring civil fraud actions against religious groups "is the least restrictive means available for advancing the state's interest in protecting individuals and families from the harmful effects of fraudulent recruitment." 762 So.2d at 61.[4]

Defendants rely solely on *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343 (D.C. 2005), which did not involve fraud, but was an internal dispute at a synagogue regarding the governing structure of the congregation and the ownership of its property.

### 2. The Arbitration Provision was Inherently Unfair to Plaintiffs.

While not critical to Plaintiffs' prevailing, since the lack of mutuality is sufficient in itself to invalidate the arbitration agreement, the provision for

---

[4] Courts have allowed fraud claims against Scientology to be litigated. *Christofferson v. Church of Scientology*, 644 P.2d 577 (Ore. App. 1982), rev. den. 293 Ore. 456 (Ore. 1982); cert. den. 459 U.S. 1206 (1983); *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F.Supp. 1125 (D. Mass. 1982).

13

selection of arbitrators is also substantively unconscionable. The arbitrators had to be Scientologists "in good standing" and, as the trial court noted, there was no definition of that term (DE225 at 2). So, as with most matters, Defendants just made it up as they went along.

Also, Plaintiffs were informed by the IJC that because they were suppressive persons, they could not contact any scientologists "in good standing" to select one. As detailed in the Initial Brief, this resulted in extensive delay in selecting arbitrators (IB 10-11). While the court expressed frustration with both parties, twice it acknowledged Plaintiffs' inherent difficulty in the selection process (DE215 at 3-5; DE225 at 2). The result was that all three arbitrators were chosen by the district judge, **from a list solely prepared by Defendants**. Plaintiffs cited two federal cases ruling that requiring the arbitrators to be selected from a list unilaterally prepared by one party is unconscionable. *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999); *Murray, supra*. Defendants ignored both cases.

Additionally, the inherent partiality, which is more accurately described as active hostility, was undisputed. Because they were declared suppressive, Plaintiffs were subject to Scientology's "fair game" policy by which scientologists were allowed and encouraged to "trick, sue, lie to, or to destroy 'enemies.'" *Allard v.*

*Church of Scientology*, 58 Cal. App. 3d 439, 447 (Cal. 2d Dist. 1976).[5] Such active hostility cannot be allowed in a bona fide arbitration proceeding.

Here, the "fair game" policy was ultimately implemented, as discussed infra, Point II. Despite being told in open court that the CVB procedures and requirements did not apply, the CVB rules were the focus of the arbitration. Despite being told in open court that Plaintiffs could present witnesses at the arbitration, on the day of the arbitration they were told they could not do so. Despite being told they could "originate" evidence, their documentary evidence was excluded or drastically redacted. Thus, the trial judge's prediction that the animosity to suppressive persons did not bode well for Plaintiffs' chances at arbitration (DE196 at 72) was ultimately proved correct.

The cases relied upon by Defendants are inapplicable. None involved contracts of adhesion or a situation where one party had complete control to choose the pool of qualified arbitrators. *Winfrey v. Simmons Food, Inc.*, 495 F.3d 549 (8th

---

[5] In *Allard, supra*, a malicious prosecution action brought by a former member against the Church of Scientology, the jury was informed of Scientology's "fair game" policy. The ddefendants objected to that evidence, claiming it violated the First Amendment as constituting an impermissible challenge to the "validity of a religion." 58 Cal. App. 3d at 447. The appellate court upheld the trial court's admission of that evidence stating (*id.*):

> A party whose reprehensible acts are the cause of harm to another and the reason for the lawsuit by the other cannot be heard to complain that its conduct is so bad that it should not be disclosed.

Cir. 2007) (contract between food processor and poultry growers which permitted each party to choose one arbitrator and those two arbitrators picked the third); *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527 (2d Cir. 2016) (collective bargaining agreement authorized particular arbitration procedure allowing commissioner to preside at arbitration); *BDO Seidman, LLP v. Bee*, 970 So.2d 869, (Fla. 4th DCA 2007) (partnership agreement limited arbitrators to partners of the firm). Also, none of those cases involve the level of animosity present as a result of the Plaintiffs' status as "suppressive persons" and Defendants' "fair game" policy.

The cases Defendants cite involving arbitration with religious organizations do not support their position either. There was no challenge to the partiality of the arbitrators in *Easterly v. Heritage Christian Sch., Inc., supra. In Gen. Conference of Evangelical Methodist Church v. Evangelical Methodist Church of Dalton, Georgia, Inc.*, 807 F. Supp. 2d 1291 (N. D. Ga. 2011) and in *Jenkins v. Trinity Evangelical Lutheran Church*, 825 N.E.2d 1206 (Ill. 2005), the plaintiffs' concern about partiality was rejected because they failed to identify any "specific prejudice" from the arbitration procedures. Here, Plaintiffs proved they had been declared "suppressive persons" and the active hostility that the policies of Scientology encourage against such people.

16

### 3.    The Trial Court was Not Precluded from Considering Plaintiffs' Claims of Substantive Unconscionability by the First Amendment

Defendants do not cite any case ruling that a court is precluded or limited in determining the enforceability of an arbitration agreement involving a religious entity. The enforceability of an arbitration provision is a question of law which the civil courts are fully authorized to determine.

Defendants rely heavily on *Meshel, supra*, but it rejects their contention. The court there specifically ruled that it could determine the enforceability of the arbitration agreement under neutral principles of law stating (869 A.2d at 354):

> The resolution of appellants' action to compel arbitration will not require the civil court to determine, or even address, any aspect of the parties' underlying [religious] dispute. Instead, **the court will have to do no more than make the two findings** that are required any time a court considers an action to compel arbitration pursuant to the District of Columbia Uniform Arbitration Act—namely, **whether the parties have an enforceable agreement to arbitrate and, if so, whether the underlying dispute between the parties falls within the scope of the agreement.** [E.S.]

In the procedural unconscionability section, Defendants claim that there is a "strong presumption in favor of enforcement of arbitration agreements" and that it "extends to arbitration by a religious tribunal." However, the determination of the enforcement of an arbitration agreement is a question of law and there is no case creating the presumption asserted by Defendants.

Defendants cite *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981 (11th Cir. 2012) for the proposition that any doubts concerning "the scope of

17

arbitrable issues" should be resolved in favor of arbitration.  That is true, but there is no issue before this Court on the scope of the arbitrable issues in this case.

None of the cases Defendants rely on in the procedural unconscionability section of their brief are relevant to the issues before this court. *Ainsworth v. Schoen*, 606 So. 2d 1275 (Fla. 3d DCA 1992) (appellate court reversed order confirming religious arbitration decision); *Jenkins v. Trinity Evangelical Lutheran Church*, 825 N.E.2d 1206 (Ill. 2005) (dispute between pastor and church over discharge, some claims subject to arbitration but plaintiff's contract claim could be litigated); *General Conference of Evangelical Methodist Church v. Evangelical Methodist Church of Dalton, Georgia, Inc.*, 807 F. Supp. 2d 1291 (N.D. Ga. 2011) (schism in church resulted in dispute over ownership of church property; enforceability of arbitration provision determined under neutral principles with no First Amendment issue); *Easterly v. Heritage Christian Sch., Inc.*, 2001 WL 2750099 (S.D. Ind. 2009) (church employee discharged; court determined enforceability of arbitration agreement without any consideration of First Amendment issues).

Defendants' later claim that "a secular court has at most an extremely limited ability to interfere with that religious arbitration system or adjudge its fairness." No authority is cited for that statement other than *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 715 (1976), which had nothing to

18

do with any arbitration. In *Serbian Eastern*, there was a schism within a church and one faction asked the court to resolve issues of church authority within the church and the allocation of property between the disputants. The highest tribunal in the hierarchical church had ruled on the issues. The Court determined that such a conflict would require extensive inquiry into church doctrine and polity, as well as interfering with the internal governance of the church, and the First Amendment barred any court from reviewing the decision of the church's highest tribunal.

Similarly, *Watson v. Jones*, 80 U.S. 679 (1871), has nothing to do with arbitration. *Watson* included a schism in a church in which one faction sought to exercise power over church property. There was no arbitration, only internal church tribunals applying religious principles.

Defendants rely on *Easterly*, but it directly refutes their position (2008 WL 2750099 *3, n.3):

> Easterly's citation to *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), and other cases for the proposition that this Court's review of a Christian arbitrator's decision is somehow limited by the First Amendment are misplaced. **The arbitrator's decision will not be the decision of a "religious tribunal" regarding a religious matter; instead, it will be the resolution of a legal claim that will be subject to judicial review** the same as if it had been conducted pursuant to the American Arbitration Association's procedural rules or any other set of secular procedures.

In summary, Defendants have not cited a single case that supports their position. Therefore, the ruling of the trial court on this issue should be reversed.

19

## POINT II

THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION TO VACATE THE ARBITRATION AWARD.

### A.     The Arbitration Award Should have Been Vacated Because there was Evident Partiality or Corruption of the Arbitrators

In the Initial Brief, Plaintiffs cited *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 1331, 1338 (11th Cir. 2002), which states that a challenge to an arbitration award based on evident partiality or corruption under 9 U.S.C. §10(a)(2) "is meant to be applied stringently," and that courts are "even more scrupulous to safe guard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review." Defendants ignore that case and instead rely on state law cases and federal cases addressing different challenges to arbitration awards.

Defendants cite *Watson v. Jones, supra, Serbian Eastern Orthodox, supra and Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94 (1952), for the proposition that courts scrupulously avoid interfering with religious arbitrations. However, none of those cases involved arbitration and all involved internal church governance disputes arising from church schisms. Defendants have not cited any federal case that applied a more deferential standard to religious arbitration decisions where evident partiality or corruption was at issue.

20

Defendants cite *Lang v. Levi*, 16 A.3d 980 (Md. Ct. Spec. App. 2011), but there the only challenge to the arbitration decision was whether Jewish law was correctly applied. There was no issue in *Lang* regarding a challenge to the impartiality or corruption of the arbitrators. The other state law arbitration cases are similarly inapposite. In fact, in *Berg v. Berg*, 2008 WL 415562 (N.Y. Sup. Ct. 2008), the court vacated a portion of the arbitration award, but more importantly, the court did not review the award under any particular deference because it was a religious arbitration.

Here, Defendants' counsel unequivocally told the district court that the arbitration award would **not** be entitled to any particular deference. When the court asked about judicial review, defense counsel stated (DE196 at 87):

> Mr. Pope: I believe that you would have the right of any court that compels arbitration to do a review limited to those areas that courts are limited to an[d] that is partiality, unfairness and partiality and corruption and that sort of stuff.

Defendants have again changed their position without explanation.

Defendants cite cases which involve evident partiality or misconduct which are easily distinguishable. In *Spector v. Torenberg*, 852 F. Supp. 201 (S.D.N.Y. 1994), the claim of misconduct was that one arbitrator made comments discussing the scope of the panel's authority and clarified certain testimony. Additionally, the award was challenged because of a supposed *ex parte* communication, however, it

was made in the presence of a stenographer and related solely to a personal computer problem.

Defendants cite *McCabe, Hannity & Remington, Co. v. ILWU*, 557 F. Supp. 2d 1171, 1183 (D. Haw. 2008) in which the scope of the court's review was limited to whether the arbitration decision was based "on a plausible interpretation of the [collective bargaining agreement]." *McCabe* was not decided under the Federal Arbitration Act but under section 301 of the Labor Management Relations Act. The court there stated that the arbitrator's expression of sympathy and anger at the conclusion of the arbitration did not constitute "an independent ground for vacating an arbitrator's award."

Here, the partiality existed because Plaintiffs had been declared suppressive and under Scientology policy they could be lied to, cheated, and harmed with impunity. The significance of their suppressive status is apparent from the CVB report which was provided to the arbitrators (DE272, Ex. E). First, the IJC requested the CVB to prepare the response, despite defense counsel having represented to the district court that CVB procedures and requirements did not apply to the Plaintiffs. Second, that report repeatedly referenced Plaintiffs' status as suppressive persons and their "high crimes" against Scientology. Pages 1-2 of that report detailed the reasons Plaintiffs were declared suppressive persons, and then itemized six "high crimes" against Scientology which Plaintiffs had been

found guilty of (DE272, Ex. E at 2). That information had no conceivable relevance to Plaintiffs' claims.

The CVB report also informed the arbitrators that Plaintiffs engaged in further high crimes by filing this lawsuit and engaging attorneys and other suppressive persons to assist them (DE272, Ex. E at 4-7). The CVB report described Plaintiffs' complaint as "malicious rumormongering in an attempt to harass the leading names of Scientology. This is a high crime and suppressive act per Scientology justice codes, in violation of policy." (DE272, Ex. E at 6). The CVB report informed the arbitrators that "the Garcias' allegations of improper use of donations constitute rumormongering, a high crime." (DE272, Exhibit E at 9). The report accuses Plaintiffs as follows (*id.*):

> The Garcias are spreading black PR, caused by their failure to come clean; they need extensive sec checking. They have missed withholds and unhandled false and evil purposes.

Putting aside the gobbledygook, the CVB report directed the arbitrators to focus on Plaintiffs' status as suppressive persons in direct contravention of their representations to the court that the arbitrators would be told to be impartial.

Scientology's "fair game" tactics against Plaintiffs were demonstrated in the arbitration and totally ignored in Defendants' Answer Brief: 1) Defendants' counsel informed the district judge that the CVB procedures did not apply to Plaintiffs; nonetheless, the CVB report and the findings of the arbitrators

demonstrate that the focus of the arbitration was whether Plaintiffs had complied with the CVB procedures; 2) Defendants' counsel informed the district judge prior to the arbitration that Plaintiffs could "bring [] whatever witnesses" to the arbitration, yet no witnesses were allowed; 3) Defense counsel represented that Plaintiffs could "originate" evidence, but their exhibits were either excluded or heavily redacted. Defendants do not address their 180 degree turn on any of these issues in their Answer Brief.

Contrary to Defendants' contentions, the arbitrators followed the CVB report completely in their findings as to every question on the pre-prepared "religious arbitration findings form" (DE272, Ex. J). The religious arbitration decision form had an additional question about whether Plaintiffs' advance payment for accommodations should be returned, and the arbitrators authorized the return of those advanced payments (DE272, Ex. K). However, returning a small award for a claimant does not preclude a finding of "evident partiality" under 9 U.S.C. §10(b), *see Tinaway v. Merrill Lynch & Co., Inc.*, 658 F.Supp 576 (S.D.N.Y. 1987).

Plaintiffs had requested that there be a court reporter or some type of recording at the arbitration, and Defendants rejected that, without citing any religious principle, legal principle, or reason. Plaintiffs therefore had to present Mr. Garcia's affidavit, which demonstrated with specificity the evident partiality and

24

misconduct (DE272). The trial judge did not reject that affidavit, but did cite certain statements in the IJC's affidavit. The lack of any recording of the arbitration necessarily prevented an adequate review of those proceedings. To the extent credibility was a factor in evaluating the conflicting affidavits, the record shows Defendants' consistent lack of credibility in their representations to the court on how the arbitration would be handled. Thus, there is no justification for accepting their subsequent representations *in toto* as to how it occurred.

The *ex parte* conduct of the IJC is an additional demonstration of the corruption and evident partiality in the arbitration proceeding. Defendants' explanation that the IJC was only "training" the arbitrators on the relevant procedures is unpersuasive. Such "training" should have been done in the presence of Plaintiffs, who had already asked about the arbitration procedures and the IJC delayed informing them until the middle of the arbitration (DE272 at 6).

In summary, the district judge's prediction that the way Scientology treated suppressive persons did not bode well for Plaintiffs at the arbitration was "spot on." This arbitration was a sham, and Defendants have not cited a single case upholding an arbitration decision that was anywhere near this level of evident partiality or corruption. This Court has stated that those standards are to be applied "stringently", and here they compel that the arbitration award be vacated.

**B.    The Arbitration Award Should Have Been Vacated Because the Arbitrators Were Guilty of Misconduct.**

**1.    The arbitrators refused to hear any evidence critical of Scientology and allowed the IJC to present evidence outside Plaintiffs' presence.**

Defendants admit that they excluded exhibits of Plaintiffs as "entheta" but convinced the trial judge that there was nothing improper in that. The trial court stated (DE282 at 7, n.5):

> Plaintiff [*sic*] assert that "entheta" is a Scientology term that means anything critical of the Church, and that the IJC excluded all their evidence under that rubric. According to Defendants, "[i]n the context of an arbitration, that definition is similar to the legal concepts of irrelevance, incompetence, immateriality, and likely to be misleading and unduly prejudicial." Only two exhibits were disallowed on this ground.

While the court states that only two exhibits were disallowed as "entheta", it ignored the undisputed fact that many of Plaintiffs' exhibits were completely redacted of all relevant information under those same grounds. Defendants ignore that as well. Plaintiffs submitted an example of a detailed accounting summary that they presented, which the IJC allowed, except he redacted everything on the page except for approximately four lines at the bottom indicating that Scientology had paid the taxes on the real property (DE272, Exs. F and G).

More importantly, Defendants' claim that "entheta" means something different "in the context of arbitration" highlights the sham nature of the arbitration. Mr. Garcia provided the doctrinal definition of "entheta" in his

26

affidavit, which is "anything that is remotely critical or negative about Scientology, even if the information is factual or true." (DE272 at 4). Defendants did not dispute that definition, but claimed that "in the context of an arbitration," "entheta" means something else. So, in the first arbitration in the history of Scientology, the IJC decides to redefine an established term of Scientology solely for the purposes of justifying the exclusion and redaction of Plaintiffs' evidence. What could be more arbitrary? This Court should not allow itself to be misled by such tactics.

Defendants contend that Plaintiffs did not present the district court with evidence of fraud, as though that was required to prevail on their motion to vacate. No legal authority is cited for that position, but it is also false.

Plaintiffs submitted with Mr. Garcia's post-arbitration affidavit a declaration from two of the witnesses he intended to present, Lynn Hoverson and Bert Shippers. They stated they had been approached by Scientology in 2001 to donate money specifically for the cross to be mounted on top of the Scientology Super Power Building in Clearwater, Florida (DE272, Ex. C). They were told the cross would be installed soon after their donation and that they would get recognition for it. Based on those representations, they paid $63,000. Nonetheless, the cross did not go up and four years later, Defendants approached Plaintiffs with the same representations. Plaintiffs paid $65,000, but received no credit and the cross still

was not installed. It is classic fraud to "sell" the same item to two different people, and it is especially aggravated when neither of them received what was promised

Plaintiffs cited numerous cases where the courts vacated arbitration awards because evidence was not heard. (IB 51-52). In *Tempo Shain Corp. v. Bertek*, Inc., 120 F.3d 16 (2d Cir. 1997), the arbitration panel refused to continue the proceeding because of the temporary unavailability of a witness, and the Second Circuit vacated the award. That error pales in comparison to Defendants' refusal and therefore, the trial court erred in not vacating the arbitration award.

## 2.    The Arbitrators Committed Misconduct in Limiting Consideration of Plaintiffs' Claims in Violation of Defendants' Prior Representations to the Court

### a.    Defendants framed the issue opposite of how it told the trial court it would in defending its right to arbitrate.

Defendants simply ignore the fact that they engaged in misconduct by violating their representations to the district court that the CVB procedures would not be an issue at the arbitration. The arbitrators demonstrated that was the primary basis for their decision. Such duplicity should not be rewarded.

### b.    Defendants refused to allow Plaintiffs' counsel to participate in the proceedings.

Plaintiffs will rely on their Initial Brief on this point.

### c.    Defendants failed to provide written findings of the arbitrators despite assuring the trial court that such would be provided.

Plaintiffs recognize that the law does not require specificity in the arbitration findings, but when Defendants refused a court reporter or recording device, they said there would a "report" prepared of the proceedings (DE196 at 87-89). Without any recording or a comprehensive report, the court could not properly review the claims of evident partiality and misconduct. Instead, the court was faced with conflicting affidavits. Based on Defendants' prior representation, that failure constituted misconduct which undermined Plaintiffs' ability to obtain a fair arbitration.

## C.    The First Amendment Did Not Prevent Vacatur of the Arbitration Award

As explained above, there is no case holding that religious arbitrations are entitled to any particular deference with respect to issues of evident partiality, corruption, or misconduct. Defendants have cited no authority, but rely on cases holding that courts cannot review the highest-level decisions of hierarchical courts on doctrinal or governance matters. But as *Easterly* notes, an arbitration award is not that type of decision. None of the cases cited by Defendants hold that awards in religious arbitrations cannot be reviewed under neutral principles of law. In fact, defense counsel told the district judge that he would be entitled to review the award as in any other arbitration. But, now, Defendants have taken another 180 degree turn and claim that the arbitration award is sacrosanct. There is no authority

justifying that conclusion and the misconduct in this arbitration compels the conclusion it should be vacated.

## **CONCLUSION**

For the reasons stated above, the orders of the district court should be reversed and the cause remanded for Plaintiffs to litigate their claims against Defendants.

## STATEMENT OF THE CASE AND FACTS RELATED TO THE CROSS-APPEAL

In January 2013, Plaintiffs filed the original Complaint against Church of Scientology Religious Trust ("CSRT"), Church of Scientology Flag Service Organization, Inc. ("Flag"), the Church of Scientology Flag Ship Organization, Inc. ("Ship"), IAS Administrations, Inc. ("IAS"), U.S. IAS Members Trust ("USIMT") (DE1). As to jurisdiction, they alleged:

- CSRT was a non-profit trust with its principal place of business in Clearwater, Florida;

- Flag was a Florida non-profit corporation with its principal place of business in Clearwater, Florida;

- Ship was a foreign non-profit corporation with its principal place of business in Clearwater, Florida;

- IAS was a Delaware corporation with its principal place of business in Clearwater, Florida; and

- USIMT was a California corporation which "actively conducts substantial business" in Clearwater, Florida and that it was an alter ego if IAS.

(DE1 at 5-6). Plaintiffs alleged that they were citizens and residents of California (DE1 at 5). They also alleged that the amount in controversy in the case exceeded $75,000 (DE1 at 5). Thus, they claimed the court had jurisdiction pursuant to 28 U.S.C. § 1332(d) (DE1 at 4-5).

31

For the next 10 months, the parties engaged in extensive litigation, related, in large part, to Defendants' attempt to have Plaintiffs' claims submitted to arbitration.

In October 2013, almost ten months after the original Complaint was filed, CSRT, IAS, and USIMT moved to dismiss the Complaint for lack of subject matter jurisdiction (DE90). They alleged that it had just "come to the attention" of defense counsel that: (1) all of the trustees of USIMT resided in California; (2) at least one of the trustees of CSRT resided in California; and (3) the principal place of business of IAS was in California (DE90). Accordingly, Defendants claimed there was no diversity of citizenship. They attached the following declarations to support their contention:

- Carole Warren, a trustee of USIMT, stated that all four trustees of that organization were residents and citizens of California (DE90 at 6-7);

- Glen Stilo, a trustee of CSRT, stated that three of the five trustees of that organization were residents and citizens of California (DE90 at 9-10);

- Mislav Raos, the Secretary of IAS, stated that IAS's principal place of business was in California (DE90 at 12-13).

Plaintiffs responded, arguing that Defendants' Motion to Dismiss should be denied because it was impossible to determine from the record whether diversity jurisdiction was defeated (DE93). Specifically, they pointed out that Defendants

had not provided the trust documents demonstrating that they were established trusts or identifying their trustees (DE 93). Plaintiffs also argued that the declarations filed by Defendants did not establish that any of the trustees lived in California *at the time Plaintiffs' Complaint was filed* (DE93). Finally, Plaintiffs argued that the allegations that IAS's principal place of business was in California were conclusory and did not meet the relevant legal standards (DE93).

Alternatively, Plaintiffs argued that they should be permitted to amend the Complaint to cure the jurisdictional defect. They explained that CSRT and USIMT "acted merely as bank accounts into which some of Plaintiffs' monies were deposited." (DE93 at 2). They explained that the fraudulent procurement of Plaintiffs' monies was committed by individuals associated with, and at the physical premises of, Flag in Florida (DE93 at 2-3).

In support of this argument, Plaintiffs submitted the declaration of Plaintiff Luis Garcia (DE93-2). Mr. Garcia stated that he had never met or spoken with anyone with CSRT or USIMT (DE93-2 at 1). He stated that he was asked to give donations to the Super Power Project by individuals who worked at the Flag facilities in Florida (DE93-2 at 1). He said that the payments were made to the trust Defendants, which he understood to be bank accounts that held money on behalf of Flag (DE93-2 at 2). To his knowledge, the trust Defendants had no employees to solicit the money in question (DE93-2 at 2).

The trial court granted the parties leave to conduct additional discovery on the jurisdictional issues (DE99). The court noted the record was "replete with conflict which is material to a determination of whether diversity jurisdiction exists, including the legal structure of CSRT and USIMT, and the identities and citizenship of their 'embers' at the time this lawsuit was filed." (DE99 at 5). The trial court denied Plaintiffs' alternative request to amend the complaint, without prejudice, noting that it could not consider the request which had only been made in the responsive memorandum (DE99 at 6).

Before the trial court ruled on Defendants' Motion to Dismiss, Plaintiffs moved to amend the Complaint to remove USIMT, CSRT and IAS as Defendants, based upon information learned during discovery (DE108). Plaintiffs explained that they then believed that Flag was the Defendant that "spearheaded all activities relating to the other entities" which gave rise to the suit and that the others were thus dispensable parties. Plaintiffs explained:

- Plaintiffs' donations to Super Power were made after multiple solicitations by representatives of Flag;

- Plaintiffs' donations to Super Power and to benefit the operations of IAS were made in connection with Flag, Flag representatives and/or while at Flag facilities; and

- Plaintiffs were never informed that CSRT and USIMT were distinct entities with any purpose other than to carry out the purposes of Flag.

(DE108 at 4).

Defendants Flag and Ship opposed Plaintiffs' Motion to Amend (DE110). They claimed that dismissal of CSRT, USIMT, and IAS would not cure the jurisdictional defect and that the parties were indispensable. They also claimed they would be prejudiced if the amendment was allowed.

The trial court granted Plaintiffs' Motion to Amend (DE113). The court recognized that, as amended, the claims alleged would not be construed as claims that Flag and Ship acted as part of a joint venture or partnership with unnamed entities, such that those entities must be considered for purposes of diversity jurisdiction (DE113 at 6). The court agreed with Plaintiffs that CSRT, USIMT and IAS were dispensable parties and held that Flag and Ship would not be prejudiced by the amendment. Accordingly, the trial court denied Defendants' Motion to Dismiss as moot (DE113 at 11-12).

Plaintiffs filed their Amended Complaint, naming Flag and Ship as the sole Defendants (DE114). The substance of the claims raised against Defendants is discussed in the Initial Brief of Appellants (IB 2-4).

Defendants moved to Dismiss the Amended Complaint for lack of subject matter jurisdiction (DE119). They claimed there was lack of diversity because the

record established that the fraudulent solicitations alleged by Plaintiffs were undertaken by CSRT and IAS and the donations were made to USIMT and CSRT. They also argued that even to the extent Flag and Ship were liable, they were merely two members of a joint enterprise, partnership, or unincorporated association and that the citizenship of all of the entities had to be considered. They also claimed that the breach of contract claims had to be dismissed for failure to meet the jurisdictional amount requirements.

Plaintiffs filed a memorandum opposing the Motion to Dismiss (DE123). Plaintiffs argued that in the new Motion to Dismiss, Defendants were doing nothing other than seeking reconsideration of the trial court's order allowing Plaintiffs to amend their complaint. They argued that no such reconsideration was warranted. They also argued that they had met the amount in controversy requirement when all of their claims were aggregated.

The trial court denied the Motion to Dismiss on the merits (DE124). The trial court recognized that Defendants had not focused on the actual allegations contained in the Amended Complaint but had improperly focused on the original Complaint. The court made clear that the allegations in the original Complaint were irrelevant, as that pleading was superseded by the Amended Complaint. (DE124 at 7, n6). The court concluded:

> Plaintiffs have sued two distinct entities in their own right, not as members of an undefined association. The only citizenships relevant

to diversity are those of these two named Defendants. Nothing Defendants have submitted demonstrates that the named Defendants are non-diverse or that the amount in controversy is less than $75,000. If Plaintiffs have sued the wrong parties, that goes to the merits of the controversy, not subject matter jurisdiction.

(DE124 at 6-7).

Thereafter, as discussed extensively in the Initial Brief of Appellants, the trial court ordered that Plaintiffs' claims had to be decided in arbitration pursuant to the Enrollment Agreements (DE189).

The trial court stayed the district court proceedings pending arbitration. After the arbitration, Plaintiffs moved to vacate the arbitration awards (DE270). The substance of the motion is discussed in the Initial Brief of Appellants. Of relevance here, Plaintiffs sought to have the arbitration award vacated so it could proceed to trial "on the merits of the claims in the Plaintiffs' lawsuit." (DE272 at 23-24). Of course, the lawsuit in question was based on the Amended Complaint against only Defendants Flag and Ship. In its response to the Motion to Vacate, Defendants Flag and Ship noted, in a footnote only, that the court could consider whether to dismiss the action for lack of subject matter jurisdiction based on lack of diversity (DE275, at 3, fn3). The trial court denied the Motion to Vacate on the merits, without addressing jurisdiction (DE282). Plaintiffs timely appealed to this Court.

After the Notice of Appeal was filed, this Court issued a Memorandum to Counsel or Parties in which it posed a series of jurisdictional questions to the parties. (See Memo from this Court dated October 9, 2018). The following questions were posed:

1. Did the district court's order in Doc. 282 [the Order on Plaintiffs' Motion to Vacate] end the case on the merits and leave nothing for the court to do but execute the judgement? [citations omitted].

2. To the extent that Doc. 282 did not end the case on the merits, is it immediately appealable under 9 U.S.C. § 16?

3. To the extent that Doc. 282 is immediately appealable pursuant to 9 U.S.C. § 16, does this Court have jurisdiction over the cross-appeal? In particular, are the orders denying the motions to dismiss immediately appealable under pendant appellate jurisdiction or another theory? [citations omitted].

Each party responded to the questions.

Thereafter, this Court posed a Supplemental Jurisdictional Question (See Memo from this Court dated December 13, 2018). In it, the Court noted that the Amended Complaint did not sufficiently allege the citizenship of SHIP. The court asked whether any deficiencies could be cured through several possible methods. In response, Plaintiffs admitted that the pleadings were insufficient in establishing Ship's citizenship; however, they noted that Defendants had never challenged jurisdiction based upon the alleged non-diversity if SHIP. Plaintiffs also stated that it was undisputed amongst the parties that SHIP was incorporated in Delaware. Plaintiffs sought to amend the complaint to remedy the insufficient jurisdictional

allegations or to supplement the record below with the information, both approved methods of remedying the situation given the undisputed fact that diversity existed, in fact.

In a decidedly non-responsive response to the limited Supplemental Jurisdictional Question, Defendants raised all of its challenges to subject matter jurisdiction based upon Plaintiffs' dismissal of CSRT, IAS and USIMT. They asked that this Court dismiss the appeal with prejudice for lack of subject matter jurisdiction.

This Court granted Plaintiffs' request to amend the complaint to properly allege jurisdiction and denied Defendants' motion to dismiss the appeal. (See Order dated March 4, 2019). In relevant part, this Court held that Defendants could "raise issues about subject matter jurisdiction in their brief that challenges the district court's orders." (Order at 2).

## SUMMARY OF THE ARGUMENT ON CROSS-APPEAL

The trial court had jurisdiction to vacate the arbitration award. At the time Plaintiffs moved to vacate the arbitration award, the trial court had already determined that it had subject matter jurisdiction to decide the claims against Defendants raised in the Amended Complaint. It was those claims that Plaintiffs sought leave to pursue in its Motion to Vacate Arbitration Award.

Defendants contend that jurisdiction after the arbitration was based upon the claims raised in the arbitration. However, that is incorrect. Plaintiffs were not limited by the jurisdictional mandates of Article III when it pursued arbitration against their will. Thus, the claims raised in the arbitration are not controlling as to the issue of whether Plaintiffs could proceed with their pending, albeit stayed, claims against Flag and Ship, the undisputedly diverse Defendants. Defendants did not submit any law to the contrary.

Likewise, the trial court did not err in denying either the motion to dismiss the original complaint or the motion to dismiss the amended complaint. As to the original complaint, that pleading became a legal nullity when the trial court granted Plaintiffs leave to amend their complaint. The trial court could no longer rule on that motion to dismiss.

As to the Amended Complaint, it is undisputed that Plaintiffs and Defendants Flag and Ship are diverse. Thus, diversity jurisdiction existed.

40

Defendants' claim that the trial court was required to assess the citizenship of the dismissed parties is unsupported. Contrary to Defendants' claims, Plaintiffs did not allege a formal joint venture or enterprise between Flag, Ship, CSRT, IAS, and USIMT. As the trial court recognized, the allegations in the Amended Complaint could support a conclusion, as best, that the three dismissed defendants may have been join tortfeasors with Defendants. There were no allegations that there was a formal agreement among all five parties which would have supported a determination that they were engaged in a joint venture or enterprise. The cases relied upon by Defendants are inapposite and highlight the distinction between a formal joint venture and the type of activity alleged in the Amended Complaint.

As to the final point raised by Defendants in their Cross-Appeal, the trial court did not abuse its discretion in allowing Plaintiffs to amend their complaint. Leave to amend should be given freely where justice so requires. Here, Plaintiffs had not abused the privilege and there were no other reasons to deny the request.

The premise of Defendants' argument is that the allegations in the Amended Complaint vary from those raised in the original Complaint so Plaintiffs should have been precluded from amending the complaint. However, that is no reason to deny a request to amend. It is common for legal theories to change as discovery takes place and new facts are acquired. This often requires the plaintiff to amend

41

the allegations to comport with the legal and factual realities. This is no basis to deny an amendment.

Finally, Defendants claim that the amendment was a sham. However, there are distinct procedures a party must follow to have a pleading stricken as a "sham." Defendants did not follow the strict requirements for having such an extreme sanction imposed here.

## <u>ARGUMENT ON CROSS-APPEAL</u>

## <u>POINT I</u>

PLAINTIFFS MET THEIR BURDEN OF ESTABLISHING DIVERSITY JURISDICTION.

Federal courts are courts of limited jurisdiction. There are two bases of federal court subject matter jurisdiction. Diversity jurisdiction, the only basis relevant to this case, exists if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." *Blankenship v. Claus*, 149 Fed. Appx. 897, 898 (11th Cir. 2005)(quoting 28 U.S.C. § 1332(a)(1)).

"For diversity to exist there must be complete diversity: 'every plaintiff must be diverse from every defendant.'" *Pierson v. Rogow*, 669 Fed. Appx. 550, 551 (11th Cir. 2016)(quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). "The party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Bryant v. Ally Fin.*, 452 Fed. Appx. 908, 910 (11th Cir. 2012)(quoting *McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir.2002)). "Citizenship for diversity purposes is determined at the time the suit is filed." *Simpson v. Fender*, 445 Fed. Appx. 268, 270 (11th Cir. 2011)(quotation omitted).

43

As discussed further below, Plaintiffs established subject matter jurisdiction based upon the undisputed diversity between Plaintiffs and Defendants, Fla and Ship.

## POINT II

### THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' MOTION TO VACATE THE ARBITRATION AWARD.

### Standard of Review

This Court reviews "de novo a district court's determination of whether it has subject-matter jurisdiction." *Gupta v. McGahey*, 709 F.3d 1062, 1064–65 (11th Cir. 2013)(citing *United States v. Al–Arian,* 514 F.3d 1184, 1189 (11th Cir.2008)). A district court's factual findings with respect to jurisdiction are reviewed for clear error. *Bryant v. Ally Fin.*, 452 Fed. Appx. 908, 909 (11th Cir. 2012)(citing *Bryant v. Rich,* 530 F.3d 1368, 1377 (11th Cir.2008)).

### Merits

Defendants claim that the trial court should have dismissed the case for lack of jurisdiction instead of deciding the merits of the Motion to Vacate Arbitration Award (AB/XIB 21-22)[6]. When the trial court ruled on the Motion to Vacate Arbitration Award, it had already determined it had jurisdiction (*i.e.*, when it denied Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction). The propriety of that decision is discussed in Point III, below. Accordingly, the discussion in Point III below applies and does not require further discussion here.

---

[6] This is a reference to pages 21 and 22 of the Response Brief of Appellees/Initial Brief of Cross-Appellants.

Defendant relies almost exclusively on *Vaden v. Discover Bank*, 556 U.S. 49, 52 (2009), to support its claim that the trial court did not have subject matter jurisdiction over Plaintiff's Motion to Vacate.[7] However, that case is inapposite and, even if it applied here, it would not support Defendants' position.

In *Vaden*, the plaintiff filed a complaint in state court raising only state law claims. The defendant answered and counterclaimed alleging state law claims. The plaintiff then filed a motion to compel arbitration in federal court pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, seeking to compel arbitration of only the counterclaims. The plaintiff claimed that the district court had federal question jurisdiction because the defendant's counterclaim was based upon state law which was preempted by federal law. The District Court agreed and ordered arbitration. The Fourth Circuit affirmed, reasoning that a federal court has jurisdiction over a section 4 petition if the parties' underlying dispute presents a federal question. *Discover Bank v. Vaden*, 396 F.3d 366 (4th Cir. 2005).

The relevant issue considered by the Supreme Court was whether "a district court, if asked to compel arbitration pursuant to § 4, [should] 'look through' the petition and grant the requested relief if the court would have federal-question jurisdiction over the underlying controversy?" The Court held that "[a] federal

---

[7] Defendants did not cite *Vaden* in the trial court. As to the Motion to Vacate Arbitration Award, Defendants noted only in a footnote that the court should dismiss the action for lack of subject matter jurisdiction.

court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law" *Id.* at 62. The court relied heavily on the language and policies behind § 4. *See id.* at 62-65.

*Vaden* involved a motion to compel arbitration under section 4 of the Federal Arbitration Act where the jurisdiction was based on a federal question. There is no reason *Vaden* should apply here, where Defendants challenge the trial court's ability to decide a Motion to Vacate Arbitration filed pursuant to section 10 and where the basis of jurisdiction is diversity.

First, the Eighth Circuit has determined that *Vaden* applies only where the federal court jurisdiction is grounded on a **federal question**. *See Northport Health Services of Arkansas, LLC v. Rutherford*, 605 F.3d 483, 487 (8th Cir. 2010). The Court held that *Vaden* did not overrule pre-*Vaden* caselaw holding that "diversity of citizenship is determined in these cases [motions to compel arbitration brought pursuant to section 4] by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19." *Id.* at 491. The only other circuit court to have considered the issue has come to the same conclusion. *See Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 326 (2d Cir. 2017).

Further, while Defendants claim categorically that "*Vaden's* look through approach applies equally to motions to vacate or modify arbitration decisions"

(AB/XIB at 21) there is, in fact, decisional conflict as to this issue. *Compare Doscher v. Sea Port Group*, 832 F.3d 372 (2d Cir. 2016) and *Ortix-Espinosa v. BBVA Securities*, 852 F.3d 36 (1st Cir. 2017) *with Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 254–55 (3d Cir. 2016) and *Magruder v. Fidelity Brokerage Services LLC*, 818 F.3d 285 (7th Cir.2016).

Regardless of whether *Vaden* was applied, the result would be the same here. Plaintiffs filed suit in federal court. That action remained pending, albeit stayed, while the arbitration proceeded. Thus, unlike *Vaden*, the Motion to Vacate Arbitration Award was not the first document filed in the federal trial court which would necessitate a determination as to jurisdiction. Jurisdiction had already been established based upon the Amended Complaint, which was still pending. If *Vaden* were to be applied, the court would have been required to "look through" to the underlying claims to determine jurisdiction. Here, that had already been done and the district court found there was complete diversity.

While Defendants rely on *Vaden*, they ask this Court to "look through" at the claims raised in the arbitration proceeding[8] (AB/XIB at 21). However, that is

---

[8] Plaintiffs were forced against their will to participate in the arbitration proceeding. The fact that they raised all potential claims against all potential parties was based on the fact that the arbitral forum was distinct from the district court, and its jurisdictional principles were unknown. Thus, that did not eliminate jurisdiction in the federal court to proceed on the claims raised in the Amended Complaint solely against the named Defendants. *See Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.*, 430 F.3d 1269, 1277 (10th Circ. 2005)(noting that the

not the proper analysis, were *Vaden* even applicable. Here, the claims Plaintiffs seek to raise in a trial court action are the claims that were already pending in the federal district court. Those claims are against Flag and Ship and there is no dispute that diversity jurisdiction exists as between them and Plaintiffs. Accordingly, the trial court did not err in refusing to dismiss the motion to vacate arbitration award based on lack of subject matter jurisdiction.

---

arbitral forum is not bound by same Article III jurisdictional limitations as federal court).

## POINT III

THE TRIAL COURT PROPERLY DENIED THE
MOTIONS TO DISMISS THE ORIGINAL AND
AMENDED COMPLAINT.

## Standard of Review

This Court reviews "de novo a district court's determination of whether it has subject-matter jurisdiction." *Gupta v. McGahey*, 709 F.3d 1062, 1064–65 (11th Cir. 2013)(citing *United States v. Al–Arian,* 514 F.3d 1184, 1189 (11th Cir.2008)). A district court's factual findings with respect to jurisdiction are reviewed for clear error. *Bryant v. Ally Fin.*, 452 Fed. Appx. 908, 909 (11th Cir. 2012)(citing *Bryant v. Rich,* 530 F.3d 1368, 1377 (11th Cir.2008)).

## Merits

Defendants allege that the trial court erred in refusing to dismiss the original and amended complaints based on lack of subject matter jurisdiction. As discussed further below, Defendants' argument is based upon misapplication of the facts and inapplicable caselaw. Accordingly, the challenged decisions of the trial court should be affirmed.

### A.    The trial court did not err in denying the motion to dismiss the original Complaint.

The trial court did not err in denying Defendants' Motion to Dismiss the original complaint as moot. While Defendants' Motion to Dismiss the original complaint was pending, the trial court granted Plaintiffs leave to amend their

Complaint. They did so. Upon the filing of the Amended Complaint, the original Complaint was a "legal nullity" on which the court could no longer rule. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *see also In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)("it is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect.")

### B. The trial court did not err in denying the motion to dismiss the Amended Complaint.

As to the Amended Complaint, Defendants argue that it had to be dismissed because Plaintiffs alleged that CSRT, IAS, and USIMT were involved in a joint venture or enterprise with the named Defendants and, as such, their citizenship had to be considered in determining diversity. This argument is based upon a misunderstanding of the facts and the law.

In the Amended Complaint, Plaintiffs alleged that Defendants and their employees engaged in fraudulent activities in an effort to illegally obtain money from Plaintiffs. In one paragraph, Plaintiffs alleged that "Defendants acted in concert either as agents or principles of one another, partners, joint venturers, or co-conspirators." (DE114 at 6, ¶21). Defendants contend that this single allegation requires that there be diversity as to the non-named entities, CSRT, IAS, and USIMT.

51

The trial court properly rejected this argument. The court recognized that Plaintiffs' use of "various legal terms of art, such as joint venture, joint enterprise, concert of actions, agents, and employees, in the proposed amended complaint at the most suggests that the various Scientology entities may have acted in concert as joint or multiple tortfeasors in allegedly defrauding Plaintiffs and causing them to suffer monetary losses, rather than as a joint venture or partnership." (DE113 at 5-6). The trial court was correct in determining that the vague references to a joint venture did not mean that a joint venture had been formed in the legal sense of that word.[9]

Defendants claim that paragraph 56 of the Amended Complaint alleges a joint enterprise between Flag, Ship and IAS (AB/XIB 23-24). However, Defendants mischaracterize the allegations of that paragraph. There, Plaintiffs alleged that representatives of Flag and Ship fraudulently solicited contributions from Plaintiffs to be contributed to IAS (DE114 at 16, ¶56). The allegations do not indicate that IAS or its representatives engaged in any fraudulent activities.

In arguing that the trial court erred in refusing to dismiss the amended complaint, Defendants repeatedly rely on the allegations of the original Complaint. However, as discussed above, the original Complaint was a nullity once the

---

[9] A joint venture/enterprise is a legal relationship resulting from an agreement between two or more persons to engage in an enterprise of limited scope and duration." *Kislak v. Kreedian*, 95 So.2d 510, 514 (Fla. 1957).

Amended Complaint was filed. Thus, the allegations there can not be used to establish a basis for dismissal of the Amended Complaint.

The Ninth Circuit considered a similar claim in *PAE Gov't Services, Inc. v. MPRI, Inc.,* 514 F.3d 856, 858–60 (9th Cir. 2007). There, the court considered the issue of whether an amended complaint that contained allegations that were apparently contrary to an earlier iteration of the same pleading rendered the later pleading a sham. The court held that even assuming that the two pleadings were irreconcilably at odds with each other, this would not, by itself, establish that the later pleading was a sham. The court explained:

> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed.R.Civ.P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. **We do not call this process sham pleading; we call it litigation.**
>
> ***
>
> The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be

53

made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading.

*Id.* at 858–60 (emphasis added).

The process that was described in *PAE* is exactly what occurred here. Plaintiffs did not engage in fraudulent pleading. Instead, in developing the facts, including through court ordered discovery as to the jurisdictional issues, Plaintiffs shaped their allegations to the facts. Defendants' claims to the contrary are unavailing and unsupported by the facts or law.

Defendants claim that Plaintiffs were "bound by their prior factual allegations and were [not] free to ignore or contradict them." (AB/XIB 24)(emphasis added). They cite a line of cases which stand for the proposition that a party is bound by its admissions in its pleadings. (AB/XIB 24)(citing *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983); *Cooper v. Meridian Yachts, Ltd*., 575 F.3d 1151 (11th Cir. 2009); *Shuler v. Ingram & Associates*, 441 Fed. Appx. 712 (11th Cir. 2011)(unpublished)). These cases do not support Defendants' position because in all of these cases, the admission in question was contained in an **operative pleading**. Here, the alleged admissions were contained in the original complaint, which was no longer of any legal effect because it was superseded by the Amended Complaint.

Defendants contend that "the citizenship of all members of a joint partnership/venture/enterprise must be counted, whether or not they are names or later dropped as parties." (AB/XIB 25). The cases it relies upon are all distinguishable. For instance, in *Carden v. Arkoma Associates*, 494 U.S. 185, 185 (1990), the plaintiff was a limited partnership (a legal entity) formed pursuant to Arizona law. The court held there that the citizenship of each member of the limited partnership had to be taken into account to determine diversity of citizenship. That case is obviously inapplicable here where Plaintiffs brought claims against two individual corporate entities. Plaintiffs did not bring suit against a single legal entity which includes CSRT, IAS, and USIMT as members.

*Grupo Dataflux v. Atlas Glob. Group, L.P.*, 541 U.S. 567, 579–80 (2004), another case relied upon by Defendants, is also inapplicable. There, a single limited partnership brought suit against a single corporation. Two of its members were non-diverse at the time the actions wad filed. Thus, the court held that there was no subject matter jurisdiction. Again, the case is distinguishable from this case because here, Plaintiff brought suit against two individual Defendants, not a limited partnership or other legal entity consisting of non-diverse entities.

Defendants also rely on several cases involving "joint ventures" (AB/XIB 27-28)(citing *Schiavone Const. Co. v. City of New York*, 99 F.3d 546 (2d Cir. 1996); *Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998);

*Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1083 (11th Cir. 2010)); however, those cases all involve formal ventures established by legal agreement. Here, there is no evidence that Flag, Ship, CSRT, IAS, and USIMT had legally established a joint venture. Furthermore, here, as opposed to the cases relied upon by Defendants, the alleged joint venture **was not a party to this suit**. This was a suit brought against several individual defendants not against a legally established partnership or joint venture.

Finally, Defendants argue that Plaintiffs cannot avoid the "requirement of complete diversity of all members of an **unincorporated entity** by suing only some members of that entity." (AB/XIB 28)(emphasis added). The problem with this argument is obvious on its face – there is no "unincorporated entity" consisting of Flag, Ship, IAS, USIMT, and CSRT.

The cases Defendants cite in support of this argument are also inapposite. Defendants cite a series of cases involving suits against Lloyds of London Underwriters. However, as discussed in *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 928-29 (2d Cir. 1998), the structure of Lloyds of London is "unique" and it "operates in accordance with age-old customs that are, to say the least, unusual in American business law." Without getting lost in the "unique" details of that business structure it is safe to say that those cases are distinguishable because they involved attempts to hold the entire organization,

which included many members, liable, while naming just one individual or group as a party. The courts in those cases held that the citizenship of all members must be considered, in those cases. Here, as noted multiple times above, there is no legal entity consisting of Flag, Ship, CSRT, IAS, and USIMT. Thus, these cases do not apply.

# POINT IV

## THE TRIAL COURT DID NOT ERR IN ALLOWING PLAINTIFFS TO AMEND THEIR COMPLAINT.

### Standard of Review

An order granting leave to amend a complaint is reviewed for an abuse of discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

### Motion to Amend Standards

A district court should freely give leave to amend "when justice so requires." *Carter v. HSBC Mortg. Services, Inc.*, 622 Fed. Appx. 783, 786 (11th Cir. 2015)(quoting Fed.R.Civ.P. 15(a)(2)).

### Merits

Defendants conclude by arguing that the district court erred in permitting Plaintiffs to amend their complaint on the basis that it was a sham (AB/XIB 29-31). This Court should refuse to address this issue because it was not preserved for appeal.

In their response to Plaintiffs' Motion to Amend Complaint, Defendants argued that the motion should be denied because amendment was futile and would not cure the defect and because they would be prejudiced if Plaintiffs were allowed to amend (DE110). Defendants did not argue that the motion should be denied as some sort of sanction for filing a sham pleading, as they contend here.

Accordingly, this issue was not preserved. *See Puckett v. United States*, 556 U.S. 129, 134 (2009)(a "right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.").

Even if this Court were to consider this unpreserved issue, the trial court's decision to allow Plaintiffs to amend the Complaint should be affirmed. Technically, Defendants claim that the trial court should have refused to allow the amendment because the allegations in the amended complaint were a sham. In reality, Defendants seek to have the Amended Complaint stricken as a sham. However, dismissal of the amended complaint as a sanction would require a motion brought pursuant to Fed. R. Civ. P. 11(c). Defendants made no such motion here. Accordingly, Plaintiffs could not have been prohibited from amending their complaint and their complaint could not have been stricken as a sanction, even if this issue had been presented to the trial court. *See PAE Gov't Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–60 (9th Cir. 2007)(holding that an amended complaint could not be stricken as a sanction because "the district court did not invoke [Rule 11's] procedural safeguards, nor did it employ the rule's substantive standard, which would have required a finding that PAE or its counsel acted in bad faith. The district court has no free-standing authority to

strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation.").

Defendants' primary contention here is that the Amended Complaint was a sham because the allegations in that latter pleading were not consistent with the allegations in the original complaint. However, as discussed thoroughly in Point III above, a party is permitted to file an amended pleading, even where some allegations contradict allegations in earlier pleadings. The trial court did not abuse its discretion in allowing Plaintiffs to amend their Complaint.

## **CONCLUSION**

For the reasons discussed above, the trial court did not err in permitting Plaintiffs to amend the Complaint and in refusing to dismiss the Amended Complaint.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Appellants/Cross-Appellees hereby certify that the Reply Brief of Appellants and Response Brief of Cross-Appellees complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 12,917 words.

   /s/ Philip M. Burlington     
PHILIP M. BURLINGTON
Florida Bar No. 285862

61

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing has been electronically filed with this Court via CM/ECF and was furnished to all counsel on the attached service list by e-mail on September 16, 2019.

Theodore Babbitt, Esq.
Babbitt & Johnson, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, FL  33409
tedbabbitt@babbitt-johnson.com
            and
Robert E. Johnson, Esq.
GRAYROBINSON, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL 33601
rjohnson@gray-robinson.com
valerie.taylor@gray-robinson.com
            and
BURLINGTON & ROCKENBACH, P.A.
444 West Railroad Avenue, Ste. 350
West Palm Beach, FL  33401
(561) 721-0400
Attorneys for Appellants
pmb@FLAppellateLaw.com
kbt@FLAppellateLaw.com

By:/s/ Philip M. Burlington
    PHILIP M. BURLINGTON
    Florida Bar No. 285862

/kbt

## <u>SERVICE LIST</u>

<u>Garcia v. Church of Scientology, etc., et al.</u>
Case No. 18-13452-B

**Robert V. Potter, Esq.**
**F. Wallace Pope, Jr., Esq.**
Johnson Pope Bokor
Ruppel & Burns L.L.P.
Post Office Box 1368
Clearwater, FL 33757
(727) 461-1818
bobp@jpfirm.com
wallyp@jpfirm.com
Attorneys for Appellees

**Eric M. Lieberman, Esq.**
Rabinowitz, Boudin, Standard,
Krinsky & Lieberman, P.C.
14 Wall St., Ste. 3002
New York, NY 10005
(212) 254-1111
elieberman@rbskl.com
Attorneys for Appellees